NB:CC

```
                    U.S. DISTRICT COURT E.D.N.Y.
                    ★  JAN 11 2008  ★
```

08-0029M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

RICHARD KING,
    also known as "Sonny,"

        Defendant.

- - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF SEARCH
WARRANTS

(T. 21, U.S.C., § 846)

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ONE BLACK VIRGIN MOBILE CELLULAR
TELEPHONE (763) 232-5998,
SUBSCRIBED THROUGH SPRINT/NEXTEL,

ONE BLACK VIRGIN MOBILE CELLULAR
TELEPHONE (845) 662-5293,
SUBSCRIBED THROUGH SPRINT/NEXTEL,

and

THE PREMISES KNOWN AND DESCRIBED
AS THE HAMPTON INN, ROOM 527,
2000 NORTH OCEAN AVENUE,
FARMINGVILLE, NEW YORK 11732

- - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

        EDWARD EGAN, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") Task Force, duly appointed according to law and acting as such.

2

Upon information and belief, on or about and between January 1, 2008 and January 11, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RICHARD KING, also known as "Sonny," did knowingly and intentionally attempt to distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

(Title 21, United States Code, Section 846)

Upon information and belief, there is probable cause to believe that there will be found in (1) ONE BLACK VIRGIN MOBILE CELLULAR TELEPHONE (763) 232-5998, SUBSCRIBED THROUGH SPRINT NEXTEL ("SUBJECT TELEPHONE NO. 1"), and (2) ONE BLACK VIRGIN MOBILE CELLULAR TELEPHONE (845) 662-5293, SUBSCRIBED THROUGH SPRINT NEXTEL ("SUBJECT TELEPHONE NO. 2"): names, telephone numbers, addresses, e-mail addresses, text messages, voicemail messages, photographs, videos and other related information concerning the distribution of narcotics, all of which constitute evidence, fruits and instrumentalities of violations of 21 U.S.C. § 846.

Upon information and belief, there is probable cause to believe that there will be located in THE PREMISES KNOWN AND DESCRIBED AS THE HAMPTON INN, ROOM 527, 2000 NORTH OCEAN AVENUE,

3

FARMINGVILLE, NEW YORK 11732 (the "SUBJECT PREMISES"), within the Eastern District of New York, certain property, namely: (1) books and records, including address books, which show the names, addresses, e-mail addresses, and telephone numbers of associates and purchasers and suppliers of narcotics, which books and records would reveal the identities of confederates in drug trafficking; (2) books and records showing cash transactions, prices and quantities of drugs purchased and sold; (3) books and records showing money laundering; (4) books and records showing properties and assets of the organization; (5) travel and rental car documents pertaining to defendant RICHARD KING's travel; and (6) United States currency, all of which constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 846.

The source of your deponent's information and the grounds for his belief are as follows:[1]

A. **Qualifications and Sources**

1. I have been a Special Agent with the Drug Enforcement Administration ("DEA") since approximately 1990. I am currently assigned to a DEA group on Long Island. During my tenure as a Special Agent with the DEA, I have participated in numerous narcotics investigations, during the course of which I

---

[1] Because the purpose of this complaint is merely to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware. The recorded conversations discussed in the complaint are set forth in sum and substance, unless otherwise noted.

have conducted physical and wire surveillance, executed search warrants, and reviewed and analyzed numerous taped conversations and records of drug traffickers. Through my training, education and experience -- which has included debriefing numerous cooperating drug traffickers, conducting numerous searches of locations where drugs and money have been found, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking -- I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2. The facts set forth in this affidavit are based on my personal knowledge and observations, my discussions with other law enforcement officers, reports of other law enforcement officers, my review of consensually recorded conversations, information provided by a confidential source, my review of documents related to this investigation, and my training and experience.

B. **Probable Cause to Arrest and for Search Warrants**

3. In early January 2008, DEA agents in Arizona advised DEA agents on Long Island that a confidential source ("CS") had a narcotics associate in New York known to the CS as "Richard" and "Sonny," with whom the CS was negotiating to sell multiple kilograms of cocaine. We have identified that

individual to be the defendant RICHARD KING. The CS has advised agents, in sum and substance, that the CS has sold multi-kilogram quantities of cocaine to KING in the past.

 4. The CS spoke to the defendant RICHARD KING, also known as "Sonny," by telephone on or about January 3, 2008. This conversation was recorded by the DEA.[2/] During that conversation, the CS advised KING, in sum and substance, that the CS might have access to "over 100" in the near future. KING responded, in sum and substance, that he was "in" and that "if we can make money, that's the name of the game." KING further advised the CS, in sum and substance, that he had "guys" who could "bang them all out" as long as long as they "get the right price." KING further assured the CS, in sum and substance, that as long as the quality was good, he could "handle it all." During the conversation, KING also stated, in sum and substance, that if the CS needed a place to keep the narcotics, he could assist with that as well. The CS advised KING, in sum and substance, that he had to talk to his source of supply and that he believed the narcotics were being transported to Newark, New Jersey. KING responded, in sum and substance, that Newark was about an hour away from him and was "no problem."

---

[2/] All telephone conversations with the defendant RICHARD KING discussed in this affidavit occurred over SUBJECT TELEPHONE NO. 1.

5. Based on my training and experience and my knowledge of this investigation, including information provided by the Phoenix DEA agents and the CS, I believe that the above-discussed telephone conversation between the defendant RICHARD KING and the CS related to the sale of a large quantity of cocaine from the CS to KING.

6. The CS and the defendant RICHARD KING, also known as "Sonny," spoke by telephone again on or about January 3, 2008. This conversation was also recorded. During the conversation, the CS advised KING, in sum and substance, that "it's in" and that the CS was going to personally "check it out." The CS further advised KING that he was trying to get KING "fifteen." KING asked the CS if he could "borrow any." KING also stated, in sum and substance, that he would call "the old man" to tell him.

7. Based on my training and experience and my knowledge of this investigation, including information provided by the Phoenix DEA agents and the CS, I believe that in this conversation, the CS informed KING that the cocaine had arrived ("it's in") and that he was trying to get fifteen kilograms of cocaine for KING. I further believe, based on my training and experience and my knowledge of this investigation, that KING wanted to know if he could get some kilograms on consignment ("can I borrow any?"). Moreover, I further believe, based on my training and experience and my knowledge of this investigation,

that when KING stated that he would call "the old man," that KING was referring to an associate of KING, who has previously received cocaine from the CS in the Phoenix area on behalf of KING.

8. Based on further negotiations between the defendant RICHARD KING and the CS that were supervised by the DEA in early January 2008, KING sent approximately $99,700 in cash via UPS to the CS in Arizona. Investigation revealed that the money was sent from Patchogue in Suffolk County, New York. The $99,700 was payment for seven kilograms of cocaine. KING and the CS agreed that KING would get additional kilograms of cocaine on consignment.

9. During a telephone conversations on or about January 9, 2008, the defendant RICHARD KING advised the CS that he would be flying into New York that day by 5:00 p.m. That same night, the CS called the defendant RICHARD KING and informed KING, in sum and substance, that the CS was on Long Island. This call was recorded. KING stated, in sum and substance, that he would drive out to meet the CS immediately.

10. At approximately 11:30 p.m. on January 9, 2008, the CS met KING inside a Bennigan's restaurant in Hauppaugue in Suffolk County. DEA conducted surveillance of the meeting. The meeting was not recorded. After the meeting, the CS advised agents that the CS told KING (as he had been instructed to do by

DEA Agents), in sum and substance, that the CS wanted to introduce KING to the CS's associate, nicknamed "Jota," and that "Jota" would deliver the drugs to KING because the CS had to return to Arizona. According to the CS, the CS further advised KING, in sum and substance, that he could sell KING 78 kilograms of cocaine at $16,500 per kilogram. The CS further told agents, in sum and substance, that the CS and KING agreed to meet the next morning so that KING could meet "Jota" and that KING said that he would bring suitcases for the narcotics.

11. DEA agents followed the defendant RICHARD KING after the meeting at the Bennigan's restaurant. KING drove a Hertz rental car (which investigation revealed was rented in the name "Richard King" at the JFK Airport) to the SUBJECT PREMISES. Agents observed KING enter the hotel with at least one piece of luggage.

12. On the morning of January 10, 2008, the CS and "Jota," who is an undercover agent ("UC"), met with the defendant RICHARD KING at the same Bennigan's restaurant on Long Island. DEA conducted surveillance of the meeting and both the CS and the UC wore recording devices.[3] At the meeting, which lasted less than five minutes, the CS introduced KING to the UC. KING stated, in sum and substance, that he wanted the narcotics that

---

[3] The CS's recording device only captured approximately 30 seconds of the meeting.

day. KING provided the CS and the UC with two empty rolling suitcases. Upon seeing the two suitcases, the UC told KING, in sum and substance, that they would not be able to fit "78 kilos" in the suitcases. In response, KING stated, in sum and substance, that they could fit over 100 in the bags. During the meeting, KING told the CS, in sum and substance to the send him the text message "DDD" every hour to SUBJECT TELEPHONE NO. 1 to let KING know that everything was fine. After the meeting, DEA followed KING to THE SUBJECT PREMISES.

13. At approximately 5:00 p.m. on January 10, 2008, the UC called the defendant RICHARD KING. This conversation was recorded. The UC advised KING, in sum and substance, that he could not provide KING with the narcotics that night, but they could meet the next morning at 10:30 a.m. The UC asked KING where he wanted to meet and KING stated "same place." KING further asked the UC, in sum and substance, how sure the UC was that the deal would take place because "I don't want to waste time here." The UC reassured KING that "this is for sure." KING instructed the UC to call him the next morning before the 10:30 a.m. meeting.

14. At approximately 8:30 a.m., agents activated a tracking device for SUBJECT TELEPHONE NO. 1, which was authorized by a judge in Phoenix, Arizona. The tracking device revealed that SUBJECT TELEPHONE NO. 1 was in the vicinity of THE SUBJECT

PREMISES. On the morning of January 11, 2008, the UC and the defendant RICHARD KING spoke by telephone to confirm their meeting at Bennigan's.

15. On January 11, 2008 at approximately 11:00 a.m., the UC met with the defendant RICHARD KING in the parking lot of the Bennigan's restaurant in Hauppauge. The DEA conducted surveillance of this meeting and the UC wore a recording device and transmitter. During the meeting, the UC advised KING, in sum and substance, that he only had "thirty-eight kilos" because the quality of the "coke" was so good that the other Mexicans took forty. KING responded, in sum and substance, that that quantity was fine. KING also told the UC, in sum and substance, that they should have gotten a room at the hotel across the street from the Bennigan's for the transaction.

16. The UC and KING removed two suitcases from the UC vehicle's trunk and placed them in KING's trunk. At that point, DEA agents arrested KING. After being advised of his <u>Miranda</u> rights, KING requested an attorney. SUBJECT TELEPHONE NO. 1 was found in the front passenger compartment of KING's vehicle. SUBJECT TELEPHONE NO. 2 was found in the trunk of the vehicle.

17. After KING's arrest on January 11, 2008, DEA agents interviewed an employee of the Hampton Inn in Farmingville, where the defendant RICHARD KING was staying. The employee stated, in sum and substance, that KING was a frequent

customer of the hotel, was due to check out on Saturday, January 12, 2008 and had not used the hotel telephone during his stay.

18. Based on my training and experience investigating narcotics cases, I know that narcotics traffickers typically use cellular telephones and their related voicemail and text-messaging systems to communicate with co-conspirators other about their illegal activities. Specifically, in this case, I know that KING used SUBJECT TELEPHONE NO. 1 to communicate with the CS and the UC regarding narcotics trafficking. Moreover, as discussed above at paragraphs 4 and 6, KING made references to co-conspirators in his discussions with the CS.

19. Moreover, although I am not aware of any calls between KING and the CS or the UC using SUBJECT TELEPHONE NO. 2, based on my training and experience investigating narcotics cases, I know that narcotics traffickers typically use more than one cellular telephone at the same time to communicate with co-conspirators about illegal activities in order to compartmentalize aspects of their illegal activities and to avoid detection by law enforcement.

20. There is subsequently probable cause to believe that there will be found in SUBJECT TELEPHONE NO. 1 and SUBJECT TELEPHONE NO. 2: names, telephone numbers, addresses, e-mail addresses, text messages, voicemail messages, photographs, videos and other related information concerning the distribution of

12

narcotics, all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 846.

21. Based on my training and experience, I know that cellular telephones are capable of storing numerous names, telephone numbers, addresses, e-mail addresses, text messages voicemail messages, photographs and videos. Voicemail messages typically can be accessed by use of a password. Therefore, I further request that VIRGIN MOBILE, the electronic service provider for SUBJECT TELEPHONE NOS. 1 and 2 be ordered to either disclose the passwords for SUBJECT TELEPHONE NOS. 1 and 2 to the DEA or to reset the passwords and provide the new passwords to the DEA.

22. Based on my training and experience and my participation in dozens of investigations involving drug trafficking, I know:

(a) that drug traffickers maintain books, records, notes, ledgers and other documentation showing the names, nicknames, addresses, e-mail addresses, and telephone numbers of their associates, as well as purchasers and suppliers of narcotics;

(b) that drug traffickers maintain books, records, receipts, notes, ledgers and other documentation showing cash transactions, prices, quantities of drugs purchased and sold;

(c) that drug traffickers maintain books, records, receipts, notes, ledgers, money orders and other documentation of money laundering and/or their properties and assets; and

(d) that drug traffickers take or cause to be taken photographs of themselves, their associates, their property and the cash being laundered.

23. Moreover, based upon my training and experience and my knowledge of this investigation (including the information detailed in paragraph 8, above), I believe that the defendant RICHARD KING has access to substantial amounts of U.S. currency and has sent large sums of money from Patchogue in Suffolk County. In addition, based upon my knowledge of this investigation, there is probable cause to believe that travel records and rental car records will be found at the SUBJECT PREMISES.

24. In view of the above, there is probable cause to believe that there will be found in the SUBJECT PREMISES certain property, namely (1) books and records, including address books, which show the names, addresses, e-mail addresses, and telephone numbers of associates and purchasers and suppliers of narcotics, which books and records would reveal the identities of confederates in drug trafficking; (2) books and records showing cash transactions, prices and quantities of drugs purchased and sold; (3) books and records showing money laundering; (4) books

14

and records showing properties and assets of the organization; (5) travel and rental car documents pertaining to KING's travel; and (6) United States currency, all of which constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 846.

WHEREFORE, your deponent respectfully requests that search warrants be issued authorizing members of the DEA, or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described matter, to search the SUBJECT TELEPHONES for names, telephone numbers, addresses, e-mail addresses, text messages, voicemail messages, photographs, videos, and other related information concerning the distribution of narcotics, all of which constitute evidence, fruits and instrumentalities of violations of 21 U.S.C. § 846. Your deponent further respectfully requests that search warrants be issued authorizing members of the DEA, or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described matter, to search SUBJECT TELEPHONE NO. 1 and SUBJECT TELEPHONE NO. 2 for voicemail and text messages and other related information concerning the distribution of narcotics, all of which constitute evidence, fruits and instrumentalities of violations of 21 U.S.C. § 846. Furthermore, your deponent respectfully requests that an order be issued, pursuant to Title 18, United States Code, Section 2703,

to SPRINT/NEXTEL requiring SPRINT/NEXTEL to provide the DEA with the passwords for SUBJECT TELEPHONE NO. 1 and SUBJECT TELEPHONE NO. 2, or to reset the passwords for SUBJECT TELEPHONE NO. 1 and SUBJECT TELEPHONE NO.2 and to provide the new passwords to members of the DEA, or their authorized representatives, to take whatever steps are necessary to preserve any voicemail or text messages on SUBJECT TELEPHONE NO. 1 and SUBJECT TELEPHONE NO. 2 pending retrieval by DEA agents.

WHEREFORE, your deponent further respectfully requests that a warrant be issued authorizing special agents of the DEA and other law enforcement officers to enter THE PREMISES KNOWN AND DESCRIBED AS THE HAMPTON INN, ROOM 527, 2000 NORTH OCEAN AVENUE, FARMINGVILLE, NEW YORK 11732, within the Eastern District of New York, and therein search for and seize certain property, namely: (1) books and records, including address books, which show the names, addresses, e-mail addresses, and telephone numbers of associates and purchasers and suppliers of narcotics, which books and records would reveal the identities of confederates in drug trafficking; (2) books and records showing cash transactions, prices and quantities of drugs purchased and sold; (3) books and records showing money laundering; (4) books and records showing properties and assets of the organization; (5) travel and rental car documents pertaining to defendant RICHARD KING's travel; and (6) United States currency, all of

16

which constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 846.

WHEREFORE, your deponent further respectfully requests that the defendant RICHARD KING, also known as "Sonny," be dealt with according to law.

Edward Egan
Special Agent
Drug Enforcement Administration

Sworn to before me this
11th day of January, 2008

/s/ E. Thomas Boyle, MJ

HONORABLE E. THOMAS BOYLE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK